Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9386 | **DATE** | March 24, 2004 |
| **CASE TITLE** | Laborers Pension    v    Paragon Paving, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]
   Memorandum opinion and order entered.
   Accordingly, plaintiffs' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | MAR 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 49 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GDS | courtroom deputy's initials | 2004 MAR 25 PM 1:44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and LABORERS' )
WELFARE FUND OF THE HEALTH AND )
WELFARE DEPARTMENT OF THE )
CONSTRUCTION AND GENERAL LABORERS' )
DISTRICT COUNCIL OF CHICAGO AND )
VICINITY, and JAMES S. JORGENSEN, )
Administrator of the Funds, )
)
Plaintiffs, )
) No. 01 C 9386
v. )
) Judge Robert W. Gettleman
PARAGON PAVING, INC., an involuntarily )
dissolved Illinois corporation, and JOHN W. )
MOZAL, individually, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and James Jorgensen (collectively, the "Funds"), filed the instant suit against defendants Paragon Paving, Inc. ("Paragon") and its President and sole shareholder, John Mozal, seeking monies owed pursuant to a collective bargaining agreement. Defendant Paragon, which was involuntarily dissolved by the Illinois Secretary of State on February 1, 2003, is in default: its attorney was granted leave to withdraw on May 13, 2003, and the company failed to obtain new representation. Defendant Mozal does not dispute that Paragon owes the Funds $17,624.88 in unpaid contributions, dues, interest, liquidated damages and audit costs for the period of January 22, 2001, through September 30, 2002.

Plaintiffs have moved for summary judgment against Mozal, arguing that he disregarded the corporate form and thus is personally responsible for Paragon's debt to the Funds, as well as attorneys' fees. For the reasons stated below, plaintiffs' motion for summary judgment is granted.

## FACTS[1]

Paragon was incorporated in 1986 and performed asphalt paving work and sewer reconstruction. Paragon ceased working on projects in January 2002, and was dissolved by the Illinois Secretary of State in February 2003.

The record presented by the parties in connection with plaintiffs' motion for summary judgment reflects that prior to its dissolution, numerous individuals received loans from Paragon without any formal documentation and without any terms of repayment or interest. For example, Dennis Doyle, who was a joint shareholder of Paragon with Mozal until June 2000, received approximately $159,384 in loans from Paragon without any formal documentation and without any terms of repayment or interest charged. When Doyle gave up his interest in Paragon to Mozal, he received, among other things, forgiveness of that $159,384 debt. Similarly, Paragon loaned $150,000, interest-free, to its attorney, Martin Litwin, without any formal documentation regarding the terms of that loan. As of the date of the instant motion, the Litwin loan also has not been repaid.

The Transaction Detail by Account of Paragon Paving, Inc. for the fiscal years September 2000 through August 2001 and September 2001 through August 2002, lists payments totaling

---

[1]Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

$498,757.07 "due from Shareholder." An examination of Mozal's deposition testimony reveals that these payments from Paragon's corporate accounts - which included cash advances as well as payments to a host of payees, including Honda Financial Corp., US Bank Home Mortgage, John Mozal personally, and St. Charles Rec Center, among others - were intended to cover Mozal's personal expenses, such as Mozal's wife's car payments and the financing of his condominium in Florida.

Mozal contends that these payments were actually a repayment by Paragon of debts owed to him and his wife, Linda Morgan. According to Mozal, he and Morgan loaned approximately $140,000 to Paragon, and Paragon repaid this debt through payments of assessments on the condominium and car payments. As evidence of these loans, Mozal submitted an affidavit and two "cash loan" registers chronicling his and Morgan's loans to Paragon. Mozal further maintains that Morgan made an additional $75,000 in loans to Paragon; in support of that contention, Mozal attached handwritten exhibits chronicling Morgan's contributions, as well as copies of some of Morgan's credit card statements.

Mozal also contends that he and his wife routinely used their personal credit cards for business purchases on behalf of Paragon, and that numerous payments to their credit card company by Paragon were intended to reimburse Mozal and his wife for those purchases. As evidence of these credit card transactions made on behalf of Paragon, Mozal references the same copies of Morgan's credit card statements mentioned above.[2]

---

[2] As plaintiffs point out, defendant fails to specify which purchases on those credit card statements were for Paragon and which were personal.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [finder of fact][3] could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Plaintiffs maintain that they are entitled to summary judgment on the issue of whether Mozal disregarded the corporate form and treated Paragon's assets as his own, rendering him liable for the moneys owed to plaintiffs by Paragon. Under Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors, and officers and, generally from other corporations with which it may be affiliated. Van Dorn Co. v. Future Chemical and Oil Corp.,

---

[3] "Whether to pierce the corporate veil under Illinois law is, according to federal procedural law, a question of equity." International Financial Services Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731, 740 (7th Cir. 2004). Therefore, plaintiffs have no Seventh Amendment right to a jury trial on that question. Id.

4

753 F.2d 565, 569 (7th Cir. 1985) (citations omitted). A corporate identity may be disregarded, and the corporate veil pierced, however, if, (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Id. at 569-570. To determine whether a unity of interest exists, Illinois law looks to the following four factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) under-capitalization; and (4) treating the assets of the corporation as the individual's own. Id. at 570.

In the instant case, defendant essentially acknowledges the commingling of corporate and personal assets by conceding that his condominium payments and Morgan's car payments were made from corporate accounts. Defendant defends these transactions by asserting that the payments were reimbursement for loans made to Paragon by defendant and his wife.

Assuming arguendo the admissibility of the cash loan registers (a highly dubious assumption given defendant's failure to establish that they fall within the business records exception under Fed. R. Evid. 803(6) and his failure to provide supporting documentation), the court concludes that Mozal disregarded the corporate veil and no reasonable factfinder, including this court, could conclude otherwise. Even accepting defendant's representation that he and Morgan loaned $215,000[4] to Paragon, the record reflects that Paragon made more than $498,000

---

[4]Defendant's representation that he routinely used his personal credit card for business purchases does not support the conclusion that he and his wife lent Paragon sums in excess of $215,000. The credit card statements that purportedly establish the "additional" loans are the same credit card statements used to establish part of the $215,000 debt (in particular, the $75,000 allegedly lent to Paragon by defendant and Morgan after their other $80,000 and $60,000 loans).

5

in payments "due from Shareholder" in its last two fiscal years alone. Moreover, even if these payments were somehow justified as the result of some agreement between Paragon and defendant to repay monies owed to him and his wife (and then some), the fact remains that Paragon failed to memorialize the terms of any such agreement in writing and maintain adequate corporate records.

The interest-free, undocumented loans made by Paragon to Litwin and Doyle fall into the same category. The terms of these loans, or lack thereof, were not reduced to writing or recorded in any other meaningful manner. These failures to keep adequately detailed records of Paragon's finances support the court's conclusion that there is a unity of interest that warrants the piercing of the corporate veil in the instant case. See Chicago District Council of Carpenters Pension Fund v. Ceiling Wall Systems, Inc., 1999 WL 47078, at *9 (N.D.Ill. Jan. 20, 1999) (characterizing failure to document loans as a failure to observe corporate formalities).

The court further concludes that plaintiffs have satisfied the second prong of the corporate veil-piercing analysis, that adherence to the fiction of a separate corporate existence would sanction a fraud or promote an injustice. Defendant continuously converted corporate assets for his own personal use even after plaintiffs filed the instant suit. When asked at his deposition why he converted assets of the corporation for his own use rather than pay his obligations to the plaintiff Funds, defendant responded, "Well, I figured I might as well take my money. My money was outstanding a lot longer than the union's." As noted above, however, Paragon made payments on defendant's behalf totaling more than twice the amount allegedly owed to defendant and his wife.

Cognizant of Paragon's debt to the Funds, defendant persisted in converting Paragon's assets for his personal use through August 2002, well after Paragon ceased working on projects. After intentionally diverting funds from Paragon to cover his personal expenses, including payments on his and his wife's luxury cars, defendant cannot now use Paragon as a shield to avoid liability. See Sea-Land Services, Inc. v. Pepper Source, 993 F.2d 1309, 1312 (7th Cir. 1993) ("Since Marchese was enriched unjustly by his intentional manipulation and diversion of funds from his corporate entities, to allow him to use these same entities to avoid liability 'would be to sanction an injustice.'") (quoting Gromer, Wittenstrom & Meyer, P.C. v. Strom, 140 Ill.App.3d 349, 354 (Ill. App. 2d Dist. 1986)). Accordingly, the court concludes that piercing the corporate veil is warranted in the instant case and grants plaintiffs' motion for summary judgment.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for summary judgment is granted. Plaintiffs are directed to prepare and submit by the close of business this date a judgment order reflecting the amount currently due. Any petition for attorneys' fees shall be governed by Local Rule 54.3.

**ENTER:** March 24, 2004

**Robert W. Gettleman**
**United States District Judge**

7